**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Case No. 1:19-cv-01307-DDD-SKC

MICHAEL SANCHEZ,

     Plaintiff,

v.

CITY AND COUNTY OF DENVER, acting by and through its
BOARD OF COUNTY COMMISSIONERS a/k/a DENVER WATER,
and
TRAVELERS INDEMNITY COMPANY,

     Defendants.

---

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

---

On March 25, 2015, Plaintiff Michael Sanchez was injured while working for Defendant Denver Water. He sues Denver Water for discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act ("ADA") and age discrimination under the Age Discrimination in Employment Act ("ADEA"), and Travelers Indemnity Company for bad faith breach of a workers' compensation insurance contract. Denver Water moves for partial summary judgment on the ADA and ADEA claims, asserting it isn't liable for any conduct after August 21, 2015 because Mr. Sanchez failed to exhaust administrative remedies. (Doc. 39.) For the following reasons, the Court **GRANTS** the motion.

# UNDISPUTED MATERIAL FACTS

The facts relevant to this motion are not in dispute.[1] Plaintiff Michael Sanchez was employed as a water service worker for Defendant Denver Water, a municipal utility owned and operated by the City and County of Denver. On March 25, 2015, he was injured on the job when he pulled a hydraulic drill from the side cabinet of a truck, slipped, and twisted his lower back.

On August 21, 2015, Mr. Sanchez filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on age and disability from March 25 to August 20, 2015:

> Since January 4, 1996, I have been employed and have worked my way up from Meter Reader to Service Worker 3. Throughout my employment, I have performed my job duties in a satisfactory manner. On March 25, 2015, I was injured while on the job.
>
> On August 11, 2015, Joe Duran, Distribution Operations Supervisor, denied me reasonable accommodation, while two younger employees in their 20's were given accommodation lasting up to 7 months.
>
> On August 11, 2015, Workers' Compensation Dr. Macauley, indicated that he could not see me working longer than 5 years. I believe he was referring to my age.
>
> On August 11, 2015, I was placed on involuntary FMLA dating back to March 25, 2015. I believe it is because of my disability and age.

---

[1] These facts are taken from Doc. 39 ¶¶ 7–12, 14–15 (supplied by Defendant) and Doc. 43 ¶¶ 1–14 (supplied by Plaintiffs), and the documents upon which they rely, none of which are disputed. The underlying allegations in Mr. Sanchez's charges are, of course, disputed, but it is the timing of those allegations, not their substances, which is at issue in the current motion.

> I am aware of other positions within Water Control that can accommodation [sic] my disability, yet I was told that currently light duty positions were not available.

In his Amended Complaint (the "Complaint"), Mr. Sanchez alleges that from August 5, 2015 to March 2016, Denver Water "continued to receive medical documentation indicating that Mr. Sanchez's injury was work related and Mr. Sanchez could return to work with temporary restrictions" but "continued in its refusal to engage in the interactive process and would not consider allowing Mr. Sanchez an accommodation of a light duty/modified duty work assignment" or transfer him to another position, despite several requests. (Am. Compl., Doc. 27 ¶¶ 125–26.) Specifically, on November 12 and December 7, 2015 two different doctors indicated an injury to Mr. Sanchez's lower back; he alleges those reports were "ignored." (*Id.* ¶¶ 128–31.) And on January 14 and March 14, 2016, Mr. Sanchez "again asked Denver Water to accommodate his disability by letting them know that he was willing to do any light duty." (*Id.* ¶ 134.)

On March 31, 2016, Denver Water terminated Mr. Sanchez. On November 10, 2017, he filed an amended charge of age discrimination, disability discrimination, and retaliation, adding the following to the factual allegations contained in his original charge:

> Since March 25, 2015 and continuing until my discharge on March 31, 2016, I was been [sic] denied reasonable accommodation. . . . On March 31, 2016 I was discharged from my position in retaliation for participating in a protected activity.

The amended charge was identical to the initial charge, except that Mr. Sanchez ticked the "retaliation" box and added the quoted language. The other discriminatory acts alleged were repeated verbatim. (*Compare* Doc. 39-1 *with* Doc. 43-1.) The amended charge did not contain

any mention of the November 12 and December 7, 2015 doctors' reports or the January 14 and March 14, 2016 requests for accommodation referenced in the Complaint.

On December 19, 2017, Denver Water received the amended charge from the EEOC. In a cover letter accompanying it, the EEOC stated:

> Please be advised that on May 8, 2016, the Equal Employment Opportunity Commission (EEOC) received Plaintiff's letter asking to amend the charge to include retaliation, which would have constituted a timely charge. As a result of an administrative error by EEOC staff, the charge was misfiled and the EEOC failed to notify you of this charge within ten days of our receipt of the charge.

(Doc. 39-2.) On January 18, 2018, Denver Water responded to the merits of the amended charge:

> In response to Charging Party Michael Sanchez's Amended EEOC Charge, please accept the following information related to the single new allegation in the Amended Charge. . . . Mr. Sanchez was terminated by Denver Water effective March 31, 2016 after it was determined that Denver Water could not reasonably accommodate the medically-based restrictions on his physical activities imposed by his physician.

(Doc. 43-2.) Denver Water did not raise any objection, at that time, to the timeliness of Mr. Sanchez's EEOC charge.

On August 3, 2018, the EEOC issued its determination on the merits of the discrimination claims, finding that "timeliness, deferral and all other jurisdictional requirements have been met," and that there

is "reasonable cause to believe that [Denver Water] failed to accommodate [Mr. Sanchez]."(Doc. 43-3.)[2] The determination continued:

> [Denver Water] accommodated [Mr. Sanchez] by placing him on light duty under the worker's compensation policy. However, once [Denver Water] deemed that [his] medical condition was not work injury related, [Denver Water] stopped the light duty accommodation. Shortly after, [Mr. Sanchez] engaged in protected activity by requesting reasonable accommodation with a job transfer, but [Denver Water] failed to engage in the interactive process by not considering a transfer to one of two vacant positions at the time, which [Mr. Sanchez] qualified for with light duty in lieu of protected leave while his medical condition improved.

On May 6, 2019, Mr. Sanchez filed this action. Denver Water then requested a copy of Mr. Sanchez's file from the EEOC.

## ANALYSIS

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). A fact is material if it could affect the outcome of the suit under the governing law; a dispute of fact is genuine if a rational jury could find for the nonmoving party on the evidence presented. *Id.* If a reasonable juror could not return a verdict

---

[2] The EEOC made "no finding regarding any other allegations in the charge," including with respect to the retaliation claim, which is not mentioned in the determination. (*See* Doc. 43-3.) According to the EEOC, "There was one charge filed in this matter (# 541-2015-02151C), and it addressed two statutes that the EEOC enforces: ADA and ADEA." (Doc. 39-4.)

for the nonmoving party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the moving party bears the burden of demonstrating no genuine issue of material fact exists. *Adamson*, 514 F.3d at 1145.

In deciding whether the moving party has carried its burden, courts do not weigh the evidence and instead must view it and draw all reasonable inferences from it in the light most favorable to the nonmoving party. *Adamson*, 514 F.3d at 1145. But neither unsupported, conclusory allegations nor mere scintillas of evidence are sufficient to demonstrate a genuine dispute of material fact on summary judgment. *Maxey v. Rest. Concepts II, LLC*, 654 F. Supp. 2d 1284, 1291 (D. Colo. 2009). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, a court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

In the Complaint, Mr. Sanchez asserts claims against Denver Water for discrimination, failure to accommodate, and retaliation under the ADA, and age discrimination under the ADEA. Denver Water moves for partial summary judgment, asserting it isn't liable for any conduct after August 21, 2015 because Mr. Sanchez failed to exhaust his administrative remedies.

Administrative remedies "generally must be exhausted as to each discrete instance of discrimination or retaliation." *Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012); *accord Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194–95 (10th Cir. 2004). In order to be properly exhausted, Mr. Sanchez must have presented his newer claims to the EEOC. Both the ADA and ADEA require a plaintiff to file a charge of discrimination with the EEOC no later than 300 days after the alleged

unlawful employment practice occurred. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018) (quoting 42 U.S.C. § 2000e-5(e)(1), which governs ADA enforcement pursuant to 42 U.S.C. § 12117(a)); *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1309 (10th Cir. 2005) (same regarding ADEA), *abrogated on other grounds by Lincoln*, 900 F.3d 1166. Mr. Sanchez filed his first charge of discrimination with the EEOC on August 21, 2015, before he was terminated, and before his two requests for accommodation in early 2016, but he did not amend that charge until November 10, 2017, which was 589 days after he was terminated and 812 days after his initial charge. Denver Water argues, therefore, that Mr. Sanchez filed no timely charge with the EEOC for any post-August 21, 2015 conduct.

Mr. Sanchez makes two main arguments in response. He first argues that the conduct covered in the amended charge relates back to the original charge. He also submits that Denver Water waived the timeliness objection it now raises by responding to the merits of the second charge before the EEOC.[3] The Court disagrees.

---

[3]     Mr. Sanchez also argues that the EEOC's reference to a May 8, 2016 letter creates a material disputed question of fact about the impact and the existence of that letter on the utility's state of mind. But for purposes of the present motion, Mr. Sanchez has not pleaded adequate facts to support the proposition that he sent such a letter; he has not supported the existence of it by document or affidavit. *See* Fed. R. Civ. P. 56(c) and (e). And as set forth below, whether the letter was sent or not, does not alter the analysis of whether Denver Water waived its timeliness defense in this suit, so the existence of the May 8, 2016 letter is irrelevant for present purposes. For those reasons, the Court ultimately agrees with Mr. Sanchez's initial proposition that it "does not believe that the existence or non-existence of a May 8, 2016 letter is relevant in this case." (Doc. 43, at 13.)

### A. Relation Back

There is no question Mr. Sanchez's amended charges were filed well after the statutory 300-day limits had passed. Nevertheless, Mr. Sanchez argues that his amended charges should be deemed to relate back to the filing date of the original charge and therefore considered timely. To relate back, an amendment must (1) correct technical defects or omissions; (2) clarify or amplify allegations made in the original charge; or (3) add additional violations "related to or growing out of the subject matter of the original charge." 29 C.F.R. § 1601.12(b). Here, Mr. Sanchez made two additions in the amended EEOC charge not included in his original charge: alleged retaliation, and failure to accommodate between August 20, 2015 and March 31, 2016. Under current controlling precedent, however, neither of those is "related to or grow[s] out of the subject matter of the original charge" such that he can sue on that alleged conduct in this Court.

First, Mr. Sanchez's retaliation charge is untimely. The Tenth Circuit has long held that an "amendment will not relate back when it advances a new theory of recovery, regardless of the facts included in the original complaint." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1327 (10th Cir. 1999). In *Simms*, the plaintiff, alleging race-based employment discrimination, also wished to sue for retaliation, and he included that second theory in an amended charge. *Id.* But, as here, the alleged retaliation had occurred more than 300 days prior to the amendment. *Id.* at 1326–27. The circuit concluded that the plaintiff's "retaliation claims were not part of a timely-filed EEOC charge, and he has not exhausted his administrative remedies with respect to these claims." *Id.* at 1327–28. Here too, Mr. Sanchez's retaliation claim advances the same, new legal theory, based on new conduct (i.e., his termination) that was not the subject of

a timely charge with the EEOC. His retaliation claim, therefore, does not relate back to his original charge, and he did not exhaust his remedies with respect to it.

Mr. Sanchez's allegations of failure to accommodate between August 20, 2015 and March 31, 2016 present a slightly more complicated problem, as his original charge alleged the same legal theory concerning an earlier time period. As Denver Water points out, courts once suggested administrative exhaustion was unnecessary for most claims related to those presented in an earlier EEOC complaint, but that view has been "unambiguously rejected." *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1227 (10th Cir. 2014) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002); *Martinez v. Potter*, 347 F.3d 1208, 1210–11 (10th Cir. 2003)). As the law now stands, a charge must be filed within 300 days for most types of conduct.

In *National Railroad Passenger Corporation v. Morgan*, the Supreme Court considered whether, and to what extent, a plaintiff alleging discrimination may file suit on events falling outside the statutory period requiring him to file charges with the EEOC. 536 U.S. at 105. The Court turned to the text of 42 U.S.C. § 2000e-5(e)(1), which "'specifies with precision' the prerequisites that a plaintiff must satisfy before filing suit. . . . A charge under this section *shall be filed*" within the required timeframe. *Morgan*, 536 U.S. at 109 (emphasis in original; quoting *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47 (1974)). To the Court, the critical questions of what constitutes an "unlawful employment practice" and when that practice "occurred" vary with the nature of the claim. *Id.* at 110. In cases alleging a "discrete retaliatory or discriminatory act," such act "'occurred' on the day it 'happened.'" *Id.* at 110. Therefore,

discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. . . . Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice."

*Id.* at 113–14. As synthesized by the Tenth Circuit, "federal courts lack jurisdiction over incidents occurring after the filing of an EEOC claim unless the plaintiff files a new EEOC claim or otherwise amends [his] original EEOC claim to add new incidents." *Eisenhour*, 744 F.3d at 1227; *see also Martinez*, 347 F.3d at 1211 ("Our decisions have unambiguously recognized *Morgan* as rejecting application of the 'continuing violation' theory.").

Taking *Morgan*, *Eisenhour*, *Martinez*, and the amendment regulation together, the Court may not permit a suit to progress upon discrete acts of a discriminatory nature that were not the subject of a charge or amendment within 300 days, even if they are "related to acts" in the original, timely charges. *Morgan*, 536 U.S. at 113. The question then is whether Mr. Sanchez's assertion that from "March 25, 2015 and continuing until my discharge on March 31, 2016, [he] was [ ] denied reasonable accommodation" involves discrete discriminatory acts or not. While the Tenth Circuit has not clearly addressed whether a failure to accommodate is a discrete act of discrimination that a plaintiff must exhaust in a charge of discrimination, at least one other court in the circuit, pointing to convincing appellate authority, has determined that "an employer's rejection of an employee's proposed accommodation is a discrete act that must be the subject of a charge of discrimination within 300 days of the employer's rejection." *Becerra v. EarthLink, Inc.*, 421 F. Supp. 2d 1335, 1343 (D. Kan. 2006) (citing *Elmenayer v. ABF*

*Freight Sys., Inc.*, 318 F.3d 130, 134–35 (2d Cir. 2003)). The Court is convinced this is the proper analysis. As the *Elmenayer* court explained, an "employer's rejection of an employee's proposed accommodation . . . does not give rise to a continuing violation. Rather, the rejection is the sort of 'discrete act' that must be the subject of a complaint to the EEOC within" the statutory period. 318 F.3d at 134–35. The court further explained that although "the *effect* of the employer's rejection continues to be felt by the employee for as long as he remains employed, that continued effect is similar to the continued effect of being denied a promotion or denied a transfer, denials that *Morgan* offered as examples of a discrete act." *Id.* at 135.

Such is the case with the alleged post-August 20, 2015 failures by Denver Water to accommodate Mr. Sanchez. As stated in the original charge, and clarified in the Complaint, prior to August 5, 2015, Denver Water "accommodated Mr. Sanchez by allowing him to work light duty under its modified/light duty work program." (Doc. 27 ¶ 109.) Then, specifically on August 11, 2015, the distribution operations supervisor denied him reasonable accommodation, while two younger employees were allegedly granted the same. After the original EEOC charge, the amended charge itself provided no information other than Denver Water continued to "deny [him] reasonable accommodation" after August 20, 2015. That threadbare allegation is not reasonably calculated to adequately apprise the employer of its alleged misconduct.

The meat of what Mr. Sanchez appears to have meant by this is laid out in the Complaint. Though they were not mentioned in the amended charge (and apparently not considered by the EEOC[4]), Mr.

---

[4] The EEOC's determination references a failure to accommodate, or engage in the interactive process, by not "considering a transfer to

Sanchez points to four specific discriminatory acts by Denver Water: It ignored doctors' reports on November 12 and December 7, 2015, and failed to accommodate him or engage in the interactive process in response to his January 14 and March 14, 2016 requests for light duty. None of this latter conduct was the subject of a timely charge. This is the failure to accommodate referenced in the amended charge for which Mr. Sanchez now wishes to hold Denver Water liable. But these were discrete acts, and the failure to accommodate conduct referenced in the amended charge did not relate back to the original.[5]

## B. Waiver

Mr. Sanchez also argues that Denver Water waived its right to object to the timeliness of the November 10, 2017 charge. Both parties recognize that a defendant may waive its right to argue administrative exhaustion: "Filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385,

---

one of two vacant positions at the time." (Doc. 43-3, at 1.) The only reference to these available jobs provided by Mr. Sanchez in either of his charges concerns a failure to accommodate on August 11, 2015. (*See* Doc. 39-1, at 6.)

[5] As mentioned above, the EEOC's cover letter mentioned a "letter" and declared that "As a result of an administrative error by EEOC staff, the charge was misfiled and the EEOC failed to notify you of this charge within ten days of our receipt of the charge." Mr. Sanchez does not allege he sent any such letter, and none appears in the record. Ultimately, the Court agrees that "a letter *asking* to amend the charge is not the same thing as actually amending the charge. Accordingly, a request to amend the charge on May 8, 2016 would *not* have rendered an Amended Charge on November 10, 2017 timely." (Doc. 43, at 11.) Thus, whether such a letter existed or not is immaterial to the timeliness question, and to the extent the EEOC's cover letter suggested otherwise, it was in error.

386 (1982); *see also Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1852 (2019) ("In sum, a rule may be mandatory without being jurisdictional, and [the] charge-filing requirement fits that bill."). The Tenth Circuit has also recently clarified that failure to exhaust is an affirmative defense. *Lincoln*, 900 F.3d at 1185.

The usual rule is that an affirmative defense must be raised in the defendant's answer or be deemed waived or forfeited. *See, e.g.*, *Wood v. Milyard*, 566 U.S. 463, 470 (2012) ("Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto.") (internal quotation omitted); *Salemi v. Colorado Pub. Employees' Ret. Ass'n*, 747 F. App'x 675, 688 (10th Cir. 2018) (Defendant "did not waive its failure to exhaust defense; instead, it timely raised the defense in both its motion to dismiss and its motion for summary judgment."). Denver Water did so here. Its first substantive participation in this case was the simultaneous filing of motions to dismiss and for summary judgment, the latter of which raised the exhaustion arguments now before the Court. (*See* Docs. 24, 25.) The Court denied those motions without prejudice when Mr. Sanchez filed an amended complaint. (Doc. 32.) Denver Water again raised this defense in its answer to that Complaint and in the instant motion for summary judgment. (Docs. 39, 41.) Under the normal rules of civil procedure, then, Denver Water clearly raised this defense at the proper time.

Mr. Sanchez argues, however, that in this case, Denver Water waived the issue by not raising it earlier, in the EEOC proceedings. He points out that the relevant dates in the original and amended charges, discussed above, have not changed, and that Denver Water knew or at least should have known of its potential timeliness arguments when it responded before the EEOC. By responding to the merits of the EEOC charge and failing to raise "a technical defect like timeliness" at that

time and in that forum, he argues Denver Water waived the right to do so now.

The Court disagrees. Waiver is "the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, (1938)). Waiver can be either express or implied, but either form requires proof that "the defendant has knowingly, voluntarily, and intentionally chosen to relinquish [a particular right]." *Vreeland v. Zupan*, 906 F.3d 866, 876 (10th Cir. 2018). Express waiver generally refers "to an explicit, written or oral waiver of a particular right." *Id.*; *see also, e.g.*, *Wood*, 566 U.S. at 474 (state waived defense by declaring it "will not challenge" the timeliness of a habeas petition); *Lincoln*, at 1187–88 & n.14 (holding that written stipulation that plaintiffs "have exhausted their administrative remedies" is "best read as a waiver" of an exhaustion defense, but leaving open question of whether to enforce the waiver in the circumstances). Mr. Sanchez does not suggest any such explicit waiver in this case, so his argument is one of implied waiver. "And to constitute implied waiver, there must be unequivocal and decisive acts or conduct of the party clearly evincing an intent to waive, or acts or conduct amounting to an estoppel." *Yates v. American Republics Corp.*, 163 F.2d 178, 180 (10th Cir. 1947).

There are no such "unequivocal and decisive acts or conduct" in this case. Even if Denver Water was fully aware that it had a strong timeliness argument when it responded to the EEOC,[6] there is nothing

---

[6] This is unlikely given the EEOC's cover letter telling Denver Water that the EEOC's own "administrative error" caused them to fail to inform Denver Water of a letter attempting to make a timely amended charge. As noted above, there is no actual evidence or support in the record for the existence of any timely action amending Mr. Sanchez's

evincing it understood that its silence would be deemed a permanent abandonment of the issue. The only relevant conduct is Denver Water's failure to make any timeliness argument to the EEOC when it responded to the substance of the charges there. That is not enough to constitute waiver, implied or otherwise.[7]

To the contrary, courts generally apply the usual rule for affirmative defenses, requiring only that timeliness be asserted in the defendant's answer in court. *See*, *e.g.*, *Salemi*, 747 F. App'x at 688; *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 381–82 (5th Cir. 2019) (upholding district court grant of summary judgment on grounds of failure to exhaust administrative remedies where plaintiff filed charges late with the EEOC and defendant did not raise that argument until its (post-motion to dismiss) answer in federal court); *Brown v. Keystone Learning Servs.*, No. 17-2211-JAR, 2018 WL 6042592, at *5 (D. Kan.

---

charges, and Mr. Sanchez's response points out that whether he actually sent such a letter is ultimately irrelevant. But the question here is not whether the letter *to* the EEOC exists, but what the cover letter *from* the EEOC told Denver Water. And it is clear that the EEOC told Denver Water that it believed it had a letter timely amending the charge. When Denver Water reviewed the actual record upon the filing of this case, it became clear that that was not true, and Denver Water then raised the issue in its answer.

[7]    The Tenth Circuit has recently "further distinguish[ed] between two potential types of implied waivers." First, "scenarios in which a court has expressly informed a defendant that a certain action or inaction will result in the loss of a particular right," and second "scenarios in which a court has not expressly informed a defendant that a particular action or inaction will result in such a loss, but the circumstances nevertheless demonstrate that the defendant is aware that it will." *Vreeland*, 906 F.3d at 876. The first of these does not apply here. And as to the second, the circumstances here do not demonstrate that Denver Water knew it would not be allowed to assert its defense in Court if it did not do so before the EEOC.

Nov. 19, 2018) ("Defendant did not waive the defense [of failure to exhaust] because it was raised in both the Answer and the Pretrial Order."); *Cook v. Union Camp Corp.*, No. CIV. A.1:95CV140-S-D, 1996 WL 407549, at *3 (N.D. Miss. Apr. 4, 1996) ("Due to the nature of the proceedings before the EEOC and their limited effect in this court, failure to have raised the 180 day limitation issue before the EEOC does not waive the right to raise the issue as an affirmative defense when answering a subsequent complaint."); *Bourne v. Sch. Bd. of Broward Cty.*, No. 10-60942-CIV, 2012 WL 12894235, at *6 (S.D. Fla. Feb. 13, 2012), *aff'd*, 508 F. App'x 907 (11th Cir. 2013) (The "defendant may raise the untimeliness of an EEOC charge as an affirmative defense [and] has done just that in its Answer and its Motion for Summary Judgment." (internal citations omitted)); *Byrnes v. Herion Inc.*, 757 F. Supp. 648, 653 (W.D. Pa. 1990) (failure to raise at EEOC level does not constitute waiver).

Mr. Sanchez's strongest argument to the contrary is based on *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256 (3d Cir. 2006). There, the plaintiff filed a charge of discrimination against a school district but failed to verify it. The EEOC then sent a copy of the unverified charge to the school district, and the school district responded to the merits of the charge without mentioning the lack of verification. *Id.* at 259, 262. When the plaintiff filed suit in court, the school district argued her claims were barred by the lack of verification. *Id.* at 262. The Third Circuit was unimpressed with the school district's delay until the plaintiff's right to amend the charge by signing it had been cut off and held that defense had been waived. *Id.* at 265. And the Tenth Circuit cited *Buck* in a case also focused on the threshold question whether the verification requirement is jurisdictional or not. *See Gad v. Kansas State Univ.*, 787 F.3d 1032, 1033 (10th Cir. 2015). Anticipating *Lincoln*, *Gad* held that

verification is not jurisdictional, and thus that it could be subject to waiver. *Id.* at 1041. It went on in dicta, however, to discuss some of the considerations a court might use to determine when waiver would occur, citing *Buck. See id.* at 1033 (While an employer who fails to raise a verification problem in the EEOC proceedings has "waived the issue as a potential defense [in court], it does not necessarily follow that the EEOC can waive the requirement unilaterally.").[8]

The Court declines to extend this analysis to the present case for several reasons. First, verification requirement addressed in *Buck* and *Gad* differs from timeliness in at least two significant ways. First, the purpose of verification is "protecting employers and co-workers 'from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury.'" *Gad*, 787 F. 3d at 1038 (quoting *Edelman*, 535 U.S. at 113). That is, verification is about streamlining the EEOC process itself. *See id.* at 1042 ("The flaw is procedural, not substantive . . . ."). Once the case reaches federal court, verification serves little, if any, further purpose because the entire EEOC review process subsumes any initial gatekeeping function verification plays. *See Blue Bell Boots, Inc. v. E.E.O.C.*, 418 F.2d 355, 357 (6th Cir. 1969) (The "Congressional intent in requiring an oath is to prevent the harassment of respondents by reckless charges."); *E.E.O.C. v. U. S. Fid. & Guar. Co.*, 420 F. Supp. 244, 249 (D. Md. 1976) ("As long as the charge is sworn to before the Commission begins its investigation, the purpose of the oath requirement prevention of harassment of employers is fulfilled."). Second, verification flaws can

---

[8] This defeats Mr. Sanchez's argument that "Denver Water's argument is further undermined by the EEOC's Determination letter which stated, "[t]imeliness, deferral and all other jurisdictional requirements have been met." (Doc. 43, at 12.) The EEOC's view of the matter may have misled Denver Water at that time, but is of no bearing here.

be remedied during the EEOC process, *Edelman*, 535 U.S. at 110, which is no longer feasible in court. The *Buck* court was clearly dismayed that the defendant there apparently took advantage of this fact. *See* 452 F.3d at 264 (explaining that the defendant knew of its potential defense, and voluntarily chose not to raise it until, it hoped, the Plaintiff had been prejudiced).[9]

By contrast, timeliness is not merely a procedural hurdle to save employers (and the EEOC) from responding to frivolous charges in their administrative infancy; it is a substantive limit on the scope of alleged discriminatory conduct permitted to be raised, and it serves that function in court, as well as in the administrative process. Waiting to raise timeliness concerns until after the EEOC process is complete also does not prejudice a plaintiff in the way that concerned the *Buck* court: Plaintiffs are not *entitled* to remedy their failure to make a timely charge in either forum, and they don't lose any rights should an employer wait until the EEOC concludes its investigation to raise that defense.

---

[9] In this sense, *Buck* may be akin to *Vreeland*, where the Tenth Circuit upheld a state-court finding of implied waiver against a party who "was manipulating the legal system with full awareness of the consequences of what he was doing." 906 F.3d at 873. Outside that scenario, of which there is no evidence here, the reading of *Buck* and *Gad* urged by Mr. Sanchez here better fits the "use it or lose it" concept of forfeiture. Neither of those courts suggests it is creating a forfeiture regime, and for good reason. "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *Olano*, 507 U.S. at 733 (internal quotation omitted). Waiver requires proof the defendant intended to abandon a right, but forfeiture simply means "that the defendant has lost the right through some action or inaction, [and] has done so under circumstances that preclude characterizing the loss as knowing, voluntary, and intentional." *Vreeland*, 906 F.3d at 876 (citation omitted).

The Tenth Circuit has also recognized that verification is an un-usual requirement: "Indeed, because verification 'is now the exception rather than the rule in federal civil practice,' it is generally the case that 'any objection to a failure to comply with a verification requirement must be raised immediately or not at all.'" *Gad*, 787 F. 3d at 1039 (quoting Wright, et al., Fed. Prac. & Proc. § 1339 (3d. ed., Sept. 2014 update)). Timeliness requirements, on the other hand, are not unusual, and the normal rule should apply to them. For these reasons, *Buck* is inapplica-ble, and instead the court applies the usual rule that an affirmative de-fense based on failure to make a timely charge is not waived where it is asserted in the answer. *See, e.g.*, *Melgar*, 931 F.3d at 381–82.

More generally, EEOC proceedings of this sort are non-adversar-ial; an employer is under no obligation to make *any* response at all dur-ing the administrative process. *See, e.g.*, *EEOC v. Grinnell Fire Prot. Sys. Co.*, 764 F. Supp. 623, 626 (D. Kan. 1991) (An "EEOC investigation is an information-gathering process and not an adversary proceeding."); *EEOC v. Astronautics Corp. of America*, 660 F. Supp. 838, 841 (E.D. Wis. 1987) (The "law is clear that a charge of discrimination does not com-mence an adversary proceeding, but rather serves to initiate the EEOC's investigation to determine whether an adversary proceed-ing should be commenced."). This is incompatible with a rule that deems failure to raise defenses there to be a waiver or forfeiture of the right to assert them in court.

In this regard, the limited nature of the EEOC process is signifi-cant. District courts do not sit in appellate review of EEOC determina-tions but hear the cases de novo. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 38 (1974); *Cottrell v. Newspaper Agency Corp.*, 590 F.2d 836, 838 (10th Cir. 1979) (noting suits brought in district court under 42 U.S.C. § 2000e-5 are de novo actions). Courts are not reviewing the

EEOC's determination for error, and are not limited to the record before the EEOC. *Carreathers v. Alexander*, No. C-5082, 1974 WL 305, at *2 (D. Colo. Dec. 11, 1974) (recalling that "Defendant has previously requested dismissal of this case, or in the alternative, summary judgment in his favor on the ground that the Court's role in this type of action is limited to a review on the administrative record," but denying that request because "plaintiff is entitled to a trial *de novo*."). While requiring employers to assert defenses before the EEOC might help the Commission discourage meritless cases that otherwise might reach courts, Congress has not imposed such a requirement, and doing so would not materially alter the courts' role. (And, by requiring all defenses to be raised before the EEOC, that process could become less effective at its gatekeeping role by causing delay and complication.)

In this case, Mr. Sanchez makes much of the fact that the EEOC's December 19, 2017 letter attached the November 17 amended charge, similarly to the EEOC's transmission in *Buck*, and that Denver Water responded. But unlike *Buck*, there is no evidence here of gamesmanship or that Denver Water intended to forego its exhaustion defense. Before suit, the EEOC not only admitted to, but highlighted its own administrative error with respect to Mr. Sanchez's intention to amend the charge years earlier and represented that it failed to notify Denver Water of what would have constituted a timely charge. After being sued, Denver Water diligently searched for any document that would have rendered Mr. Sanchez's post-August 21, 2015 claims timely. Once it found, contrary to the EEOC's representation, no evidence of a second timely charge, Denver Water raised Mr. Sanchez's failure to exhaust any such claims in its first substantive filing in this action—in an earlier motion for summary judgment on the same grounds now before the Court.

It further raised, in its answer, Mr. Sanchez's failure to exhaust administrative remedies to the extent his ADA and ADEA claims are based on adverse actions that he alleges occurred after August 21, 2015. The deadlines for Mr. Sanchez to amend had already long passed when Denver Water responded to the EEOC, and thus contrary to *Buck*, there was nothing to be gained by Denver Water in not raising the defense in its response.

## CONCLUSION

For the foregoing reasons, Denver Water's motion for partial summary judgment (Doc. 39) is **GRANTED**. Mr. Sanchez may not recover for the conduct alleged to have taken place after August 21, 2015.

Dated: November 4, 2019.          BY THE COURT:

_____
Daniel D. Domenico
United States District Judge